[No. 36266.    Department One.    October 4, 1962.]

JAMES F. BOCKSTRUCK *et al.*, *Respondents*, v. SHIRLEY JONES *et al.*, *Appellants*.*

*Reported in 374 P. (2d) 996.

*Smith, Smith & Smith* (*Del Cary Smith* and *Del Cary Smith Jr.*, of counsel), for appellants.

*Grant L. Kimer*, for respondents.

HILL, J.—A disfavored driver, severely injured in an intersection collision, secured a substantial verdict against the owners of the car driven by the favored driver. From a judgment, entered on the verdict, the defendants appeal.

The applicable rule, both by ordinance and statute (Spokane, Washington Traffic Code No. C12833, which is substantially identical with RCW 46.60.150), makes it the duty of the operator of any vehicle approaching an intersection to look out for and give right of way to vehicles on his right simultaneously approaching a given point within the intersection.

Eight assignments of error raise just two issues: Should instructions have been given on the deceit exception to the right-of-way rule,[1] and the first phase of the doctrine of last clear chance.[2]

---

[1] Instruction No. 6 was as follows: "The laws of the State of Washington provide that drivers, when approaching highway intersections, shall look out for and give the right of way to vehicles on their right simultaneously approaching a given point within the intersection, whether such vehicles first enter and reach the intersection or not.

"This right of way, however, is not absolute but relative, and the duty to avoid accidents or collisions at highway intersections rests upon both drivers. The primary duty, however, rests upon the driver upon the left, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times.

"If two cars collide within an intersection, then they must be considered to have been simultaneously approaching a given point within the intersection, within the meaning of the law. However, if the driver on the left meets the burden of producing evidence showing that the favored driver on the right so wrongfully, negligently or unlawfully operated his or her car as to deceive the driver on the left, as a reason-

This case presents, if the disfavored driver be believed by the jury as she obviously was, a classic example of what is meant by a deceived driver in *Martin v. Hadenfeldt* (1930), 157 Wash. 563, 567, 289 Pac. 533, 535. We there said:

"(3) If two cars collide within the intersection, then they were simultaneously approaching a given point within the intersection, within the meaning of the statute, unless—

"(4) The driver on the left assumes and meets the burden of producing evidence which will carry to the jury the question of fact as to whether or no the favored driver on the right so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver on the left and warrant him in going forward upon the assumption that he had the right to proceed."

The collision occurred at the intersection of Oak Street and Second Avenue in Spokane. The disfavored driver was proceeding north on Oak Street and, at a point some 18 feet from the south line of Second Avenue, she looked to her right and had an unobstructed view of Second Avenue for a distance of 324 feet, to a sign which partially obstructed her view beyond that point. There was no moving vehicle in sight on Second Avenue; and, with a speed limit of 25 miles an hour on that street, she assumed that it was safe for her to cross the Second-Avenue intersection and pro-

---

ably prudent man or woman, and warrant him or in going forward on the assumption that he or she had the right to proceed, then the right-of-way rule would not apply in favor of the driver on the right."

[2]The first paragraph of instruction No. 11 was as follows:

"The 'last clear chance' rule of law in this state, insofar as it is applicable to this case means: That if you find by a preponderance of the evidence that the plaintiff, Bonnie J. Bockstruck, was guilty of negligence in any one or more of the respects alleged against her by defendants, and, likewise find from a preponderance of the evidence that the defendant, Shirley Jones, actually saw the plaintiff, Bonnie Bockstruck violating the law in any respect and should have appreciated the danger, if any, of a situation that was created by her negligence, if any, and thereafter failed to exercise reasonable care to avoid a collision with the said Bonnie Bockstruck, such failure, if any, on the part of Shirley Jones would render the defendants liable in this action, and you must then find for the plaintiffs, even though said plaintiff Bonnie Bockstruck may also have been guilty of negligence that continued up to the instant of the injury."

ceeded to do so at a speed of approximately 5 miles per hour. Her testimony was that she did not look to her right again and failed to see the favored car until an instant before the collision.

The jury could have found that the favored driver was not in sight, when the disfavored driver looked to her right, and that the favored driver thereafter traveled the 324 feet on Second Avenue, just east of the Oak-Street intersection, at a speed of 45 miles an hour.

The defendants' contention here is that the issue of deception cannot be submitted to the jury where the evidence is, as in this case, that the disfavored driver did not see the favored driver's vehicle until the instant of the collision.

We have said, lately and repeatedly, that "One is not deceived by that which one does not see." *King v. Molthan* (1959), 54 Wn. (2d) 115, 122, 338 P. (2d) 338, 343; *Zorich v. Billingsley* (1958), 52 Wn. (2d) 138, 141, 324 P. (2d) 255, 258; *Smith v. Laughlin* (1958), 51 Wn. (2d) 740, 744, 321 P. (2d) 907, 910.

That statement was applicable in the cases where it was made, *i.e.*, in cases where the disfavored driver did not look to the right, or where he looked but did not see what was obviously there to be seen. It has no applicability to the present case. A disfavored driver, who properly looks to the right, can be deceived by a clear stretch of road as well as by the deceptive manner in which a favored driver operates his vehicle. For a comparable case see *Roberts v. Leahy* (1950), 35 Wn. (2d) 648, 214 P. (2d) 673.

The jury could have concluded that the disfavored driver, with an unobstructed view of 324 feet to her right along Second Avenue and no moving vehicle in sight, was warranted in assuming that she had a fair margin of safety.

The favored driver contends further that there was not a fair margin of safety, because the point from which the disfavored driver looked to the right, *i.e.*, 18 feet from the intersection, was a patently improper one in view of the slow rate of speed at which she was proceeding.

The answer to that contention was given in *Fetterman v. Levitch* (1941), 7 Wn. (2d) 431, 437-38, 109 P. (2d)

1064 (an opinion by the late Judge Steinert), where it was said:

" . . . this court has never said, dogmatically, that 'one entering an intersection' must look to his right immediately *at the curb line*; nor has it ever attempted to prescribe a rule fixing the exact number of feet from the curb line within which the driver on the left must look. In the very nature of things, no such rule can, or should, be promulgated, for the simple reason that conditions differ with every intersection and with every instance in which a driver endeavors to cross an intersection.

" . . .

"In the performance of the duty resting upon him, it is obviously essential that the disfavored driver look to his right from a point *at which he can see and reasonably decide* whether he can proceed across the intersection with a fair margin of safety. The maximum distance from the curb line at which the required observation may be made necessarily depends upon the surrounding conditions and circumstances. In the case of a completely obstructed corner, one, for instance, where a building is constructed along the two property lines, such observation can, obviously, be made only at, or practically at, the curb line. In the case of a wholly unobstructed corner, as, for instance, one where there is an open, vacant lot, level with the street, and with nothing upon its surface, the observation, manifestly, can be made at an earlier point. Between these two extremes, the required points of observation must necessarily vary. In each instance, however, the rule is the same, namely, that the observation must be made from such point as will enable the driver to see and reasonably decide whether he has, and can maintain, a fair margin of safety.

"Whether or not the disfavored driver has performed the duty incumbent upon him, is ordinarily a question for the jury, and cannot be decided by the court as a question of law, unless the circumstances are such that it can be said that reasonable minds could not arrive at different conclusions thereon."

In that case, the disfavored driver looked to his right, 25 or 30 feet from the intersection. He had an unobstructed view for a distance of over 300 feet and saw the favored driver's car some 260 feet from the intersection, traveling at a speed of 25 miles an hour. There was nothing to indi-

cate that the favored driver would accelerate his speed. The disfavored driver, then traveling 18 or 20 miles per hour,

". . . concluded that he himself had plenty of time to get well over the intersection before the arrival there of the other car. He therefore did not stop at the intersection, but proceeded to cross it. . . ." (p. 433)

Two disinterested witnesses corroborated his testimony that the favored driver's "automobile entered the intersection at a speed of thirty-five or forty miles per hour, with its brakes screeching." In affirming a judgment for the disfavored driver, the court said (p. 440):

"Whether or not respondent, in the case at bar, acted reasonably in relying upon an unobstructed observation made twenty-five or thirty feet from the intersection was, at least, under all the accompanying circumstances, a question upon which reasonable minds might differ. The question, then, of whether or not respondent complied with his initial duty, as prescribed by the statute, and as enjoined by our decisions above referred to, was one for the trier of the fact. The jury found that respondent complied with that duty.

"That it was likewise for the jury to say whether or not respondent, after his initial look to the right, acted reasonably in failing to look in that direction again, or continuously, while crossing the intersection, has been definitely settled in this jurisdiction. . . ."

Substitute "eighteen feet from the intersection" for "twenty-five or thirty feet from the intersection" in the first of the paragraphs just quoted, and the language of the quotation would be entirely appropriate to the present case.

The issue of deceit was properly submitted to the jury.

We turn now to a consideration of the applicability of the first phase of last clear chance, i.e., where the defendant (or, in this case, the favored driver) actually saw the peril of the plaintiff (or, in this case, the disfavored driver) and should have appreciated the danger. (See note 2 for the instruction given.) While the favored driver testified that she saw the disfavored driver's car on Oak Street approaching the intersection, she said it was a quarter of

a block south of the intersection and she assumed that it would yield her the right of way. The jury was entitled to disbelieve the favored driver and to believe the disfavored driver's testimony that she was less than 18 feet from the intersection when the favored driver first had an opportunity to see her, *i.e.*, when the favored driver was 324 feet from the intersection.

The right front of the favored driver's car hit the right rear of the disfavored driver's car, and the point of impact was 30 feet north of the south-curb line of Second Avenue and 11 feet 5 inches west of the east-curb line of Oak Street. There were no skidmarks and no indication that the favored driver, who under the testimony as to speed could have been 260 to 270 feet away when the disfavored driver entered the intersection, either attempted to put on her brakes or to pass behind the disfavored driver.

■ Although a favored driver may assume that a disfavored driver will yield the right of way, this does not justify recklessness by the favored driver. *Robison v. Simard* (1961), 57 Wn. (2d) 850, 360 P. (2d) 153. This was a case where the jury could properly find that, assuming contributory negligence by the disfavored driver, the favored driver (by the exercise of reasonable care) could have averted the accident and that she saw the disfavored driver's perilous situation in time to do so. See *Moen v. Chestnut* (1941), 9 Wn. (2d) 93, 113 P. (2d) 1030.

We cannot conceive a clearer case of last clear chance. The judgment is affirmed.

Finley, C. J., Weaver, Rosellini, and Foster, JJ., concur.