[No. 10975–8–I.   Division One.   May 21, 1984.]

STEVEN H. HAMMEL, *Appellant,* v. DALE C.
RIFE, ET AL, *Respondents.*

*Norman & Loreen* and *Mary Alice Norman,* for appellant.

*Betts, Patterson & Mines, P.S., William P. Fite,* and *Ingrid W. Hansen,* for respondents.

ANDERSEN, J.—

## FACTS OF CASE

This appeal follows a defense verdict in a personal injury action arising out of a motorcycle–truck collision on one of Seattle's main arterial streets.

The motorcyclist was northbound on the arterial and the truck, which had been proceeding southbound, made a left turn across three northbound lanes into a driveway and was struck by the motorcycle before the truck cleared the northbound lanes. The motorcyclist as plaintiff sued the truck driver.[1] The jury returned a verdict for the defendant. A special verdict to the jury asked the question, "Was the defendant negligent?", and to this the jury responded, "No."

Plaintiff's motion for a new trial was denied, judgment dismissing the action was entered and the plaintiff brings this appeal.

The appeal is based on an agreed report of proceedings, approved by both counsel and the trial judge, and entered pursuant to RAP 9.4. In such a case, we will not on

---

[1] Although the defendant driver's husband is also a party to this appeal, for convenience we will refer to the driver as though she were the only party defendant.

appeal consider matters not included in the agreed report of proceedings. *In re Estate of Shoptaw,* 54 Wn.2d 602, 604, 343 P.2d 740 (1959). While that document is less than a model of clarity concerning the facts of the accident, the following facts reasonably appear therefrom.

1. The accident occurred on 15th Avenue West, a north–south arterial street in Seattle having three lanes in each direction with a center left turn lane.

2. The plaintiff motorcyclist was northbound and, before the truck driven by the defendant began its left turn, it had been southbound.

3. Between intersections, the defendant pulled into the center left turn lane preparatory to making a left turn into a driveway.

4. At the time the defendant commenced her left turn, approaching northbound traffic was stopped for a red light at the next intersection south, the Garfield Street intersection. It is not clear from the agreed report of proceedings if the plaintiff's motorcycle was stopped in such position as to be visible to the defendant, but if not it was behind a stopped vehicle that was visible to the defendant. The intersection was 240 feet south of the defendant's truck. The vehicles stopped at the traffic light to the south of the defendant's left turning truck, including the plaintiff's motorcycle, were all at least 240 feet plus the width of the Garfield Street intersection from the truck at the time it started its left turn.

5. After the defendant started to turn left, the vehicles behind the red light at the Garfield Street intersection (which was now to the defendant's right) started toward her. Apparently this was because the traffic light at the Garfield Street intersection turned green for the northbound vehicles, but in any event the vehicles that had been stopped did proceed north through the intersection toward the left turning truck.

6. At that time the plaintiff on his motorcycle pulled out to the right of the northbound traffic into the curb lane, accelerated past the automobiles and proceeded without

swerving straight to the point of impact with the right rear corner of the defendant's truck which had not cleared the arterial at the time of the collision. The point of impact was in the northbound curb lane.

7. Nothing indicates or suggests other than that the arterial was straight and that the parties had the opportunity for a clear, unobstructed view of each other once the plaintiff came through the intersection.

8. The only eyewitnesses to testify at the trial were the defendant and her passenger. The plaintiff sustained brain damage in the collision and as a consequence had no memory of it.

9. Conflicting expert testimony was presented from which the jury could determine that the plaintiff either was or was not speeding.[2]

There are two principal issues in this case.

## ISSUES

ISSUE ONE. Did the trial court err in instructing the jury on right of way?

ISSUE TWO. Did the trial court err in refusing to admit evidence of the plaintiff's prior good driving record?

## DECISION

ISSUE ONE.

CONCLUSION. In this case involving a truck making a

---

[2]Although our decision herein is based on the agreed report of proceedings that the parties filed, the trial briefs, discovery depositions and exhibits (including photographs of the accident scene) were made a part of the appellate record.

Without basing our decision thereon, we do observe the following as supporting our interpretation of the agreed report of proceedings: (1) the trial memorandum of defendants Rife, at pages 2 and 3, stated that the defendant and her passenger (the only eyewitnesses who testified to how the accident occurred) would testify that the Garfield Street light turned green after the defendant started her left turn, and that they both saw the plaintiff's motorcycle begin accelerating toward them in the curb lane; (2) in the discovery deposition taken of the defendant driver, the driver testified to that same general effect as her trial memorandum stated; (3) plaintiff's trial brief at page 2 notes that the accident occurred at 4 p.m.; and (4) accident scene photos taken while the plaintiff was still lying on the pavement reveal that the street is straight at the place where the accident occurred and that it was daylight at the time.

midblock left turn in front of an approaching motorcycle, the trial court in instructing on right of way erred when, under the facts presented, it instructed the jury on deception.

The following instruction on right of way involving left turning vehicles was given to the jury:

> A statute provides that a driver intending to turn to the left into a driveway shall yield the right of way to any vehicle approaching from the opposite direction which is so close as to constitute an immediate hazard. This right of way, however, is not absolute but relative, and the duty to exercise ordinary care to avoid collisions rests upon both drivers. The primary duty, however, rests upon the driver turning to the left, which duty must be performed with reasonable regard to the maintenance of a fair margin of safety at all times.
>
> *If the oncoming driver wrongfully, negligently, or unlawfully operates the vehicle in such a manner that it would deceive a reasonably careful driver making the left turn, so as to cause that driver to proceed forward on the assumption that there was a fair margin of safety, and if the driver turning left is in fact so deceived, then the right of way rule would not apply in favor of the oncoming driver.*

(Italics ours.) Instruction 6.

This instruction basically uses the language of the recommended pattern jury instruction, WPI 70.02.01. Neither party contends that it does not accurately state the law. Both parties proposed that the first paragraph of the instruction be given. The defendant alone proposed that the second paragraph (above emphasized) also be given, and the plaintiff excepted thereto. It is this second paragraph which states the deception doctrine. As to that, the Note on Use of the instruction by the Washington Supreme Court Committee on Jury Instructions observes that the paragraph on deception should be used "only if the evidence in the case warrants it." 6 Wash. Prac. 292 (1980). In the case before us, the evidence did not warrant it.[3]

---

[3]The defendant urges that the record before the court is inadequate to deter-

At the outset, it must be kept in mind that the deception doctrine developed in order to cushion the harsh effects of the negligence per se doctrine as applied to collisions resulting from left turns at or between intersections. As such, the doctrine is applicable only where the favored driver has by some wrongful driving conduct deceived a reasonably prudent disfavored driver into believing that he or she can make a left turn with a fair margin of safety. *Chapman v. Claxton,* 6 Wn. App. 852, 856, 497 P.2d 192 (1972). The doctrine is limited to those situations where the favored driver's deception is "tantamount to an entrapment, a deception of such marked character as to lure a reasonably prudent driver into the illusion that he has a fair margin of safety in proceeding . . .", *Mondor v. Rhoades,* 63 Wn.2d 159, 167, 385 P.2d 722 (1963). *See Chapman,* at 857.

In *Oliver v. Harvey,* 31 Wn. App. 279, 283–84, 640 P.2d 1087, *review denied,* 97 Wn.2d 1020 (1982), we recently summarized the factual situations in which the deception doctrine may be applied:

> The "deception doctrine" has been applied in two distinct situations. First, it applies when
>> the disfavored driver *sees* the favored vehicle and is deceived by the actions of the driver of that vehicle. . . . One cannot be deceived by that which he does not see. . . . And, if one sees the favored vehicle only an instant before the collision, there is, again, no deception in the legal sense.
>
> (Citations omitted. Italics ours.) *Tobias v. Rainwater,* 71 Wn.2d 845, 853, 431 P.2d 156 (1967). The doctrine does not apply "in cases where the disfavored driver did not look . . ., or where he looked but did not see what was obviously there to be seen." *Bockstruck v. Jones,* 60 Wn.2d 679, 682, 374 P.2d 996 (1962).
>
> Second, a disfavored driver may be deceived by a clear

mine whether or not the use of the deception doctrine instruction was appropriate. However, the agreed report of proceedings and the clerk's papers comply with the court rules, *see, e.g.,* RAP 9.4, RAP 9.2(b); and under the facts as set out and agreed to by the parties, the appellate record, though minimal, is adequate for us to determine this issue.

stretch of road. *Bockstruck,* at 682. This aspect of the deception doctrine applies when

> the disfavored driver, consistent with the primary duty of caution resting upon him, and consistent with the physical surroundings, carefully looked from a point of appreciable observation and *could not see* a negligently operated favored vehicle because of a physical obstruction upon or about the roadway. Entrapment of the disfavored driver is thus predicated upon two circumstances: (a) The favored driver's negligent operation, and (b) the concealment thereof from prudent view by an obstruction.

(Italics ours.) *Ward v. Zeugner,* 64 Wn.2d 570, 573, 392 P.2d 811 (1964).

Examining the facts of the case at bench in light of the situations posited in *Oliver,* we can perceive of no way that the "deception doctrine" could apply in this case.

It is true that the defendant saw the plaintiff before the collision, although under the parties' stipulation it is not precisely clear just how far away he was when she first observed him. If she saw him "only an instant before the collision, there is, again, no deception in the legal sense." *Tobias v. Rainwater,* 71 Wn.2d 845, 853, 431 P.2d 156 (1967), as quoted in *Oliver.* Even assuming that the defendant driver saw the plaintiff as soon as he passed the vehicles proceeding into the Garfield Street intersection or just thereafter, and that the plaintiff was speeding, "excessive speed alone on the part of the favored driver is not sufficient, in and of itself, to justify the submission to the jury of the issue of deception." *Tobias,* at 853.

Nor can the "clear stretch of road" aspect of the deception doctrine, *see Oliver,* be here invoked by the defendant. This is because nothing suggests plaintiff's vehicle was a "negligently operated favored vehicle" either before or while it was stopped for the red light and when the defendant first began her left turn, as it must have been for this branch of the deception doctrine to apply. *Ward,* at 573, as quoted by *Oliver* above. In addition, nothing suggests the possibility of any obstruction being between the

defendant and the plaintiff from the time the plaintiff pulled into the intersection. The vehicles stopped at the intersection ahead of the plaintiff's motorcycle were visible, and since they too pulled out when he entered the intersection, they cannot for purposes of the deception rule be considered a physical obstruction upon or about the roadway. *See Ward v. Zeugner,* 64 Wn.2d 570, 573, 392 P.2d 811 (1964); *Chapman,* at 857–58.

In the final analysis, there is nothing in the facts of this case to show that the plaintiff motorcyclist did anything to "entrap" or "lure" the defendant into an illusion of safety, *Mondor,* at 167, or that the plaintiff's "negligent operation" of his motorcycle was concealed from the defendant's view by "a physical obstruction upon or about the roadway", *Ward,* at 573. The deception paragraph of the right of way instruction was therefore inappropriately given.

It is prejudicial error to submit an issue to the jury where there is no substantial evidence concerning it. *Albin v. National Bank of Commerce,* 60 Wn.2d 745, 754, 375 P.2d 487 (1962); *Bean v. Stephens,* 13 Wn. App. 364, 369, 534 P.2d 1047, *review denied,* 86 Wn.2d 1003 (1975). The probable prejudice of instructing on the deception doctrine is manifest in this case since the jury by its special verdict found that the defendant was not negligent at all despite the plaintiff motorcyclist having been accorded right of way by force of statute and city ordinance. RCW 46.61.185; Seattle Traffic Code 11.55.080. As the leading deception doctrine case of *Tobias* states at page 852, wherein it quotes with approval from *Mondor,* at 167, the right of way granted in such situations "ought not to be lost in the maze of details arising from split–second computation of time and distance." It was error for the trial court to give the second paragraph of instruction 6 encompassing the deception doctrine and the judgment must be reversed and the case remanded for a new trial.

ISSUE TWO.

CONCLUSION. It would have been no more proper for a driver in this case to introduce evidence of a good driving

record than it would have been to permit the opposing party to show that the driver had a poor driving record. Neither type of evidence is relevant on the issue of a driver's negligence or lack of same in this accident case.

■ As we held in *Breimon v. General Motors Corp.*, 8 Wn. App. 747, 754–55, 509 P.2d 398 (1973), "[e]vidence of a previous similar accident involving a party generally is inadmissible to show a lack of care by the same party as the cause of the accident in question. Such evidence is irrelevant concerning the cause of the instant accident since innumerable factors and causes present in the situation may not have been present previously and vice versa."

Conversely, "[i]t seems to be a universal rule that it cannot be shown as bearing upon the question of negligence on a particular occasion that a person whose conduct is involved was careful and prudent on other occasions." *Ferreira v. General Motors Corp.*, ___ Hawaii App. ___, 657 P.2d 1066, 1069 (1983) (quoting *Gilliam v. Gerhardt*, 34 Hawaii 466, 468–69 (1938)). *Accord, Rouse v. Huffman*, 8 N.C. App. 307, 174 S.E.2d 68, 69 (1970). Specifically here, "testimony that a driver involved in an automobile accident had been a careful driver for many years is inadmissible on the negligence issue." *Ferreira*, at 1070; *Bracht v. Palace Laundry Co.*, 156 Or. 151, 65 P.2d 1039, 1044 (1937).

As to the plaintiff's remaining assignments of error, we conclude they are not well taken.

The affidavits submitted by the plaintiff on his claim of juror bias fell short of establishing that the juror in question was biased, prejudiced or otherwise guilty of misconduct. The "existence of a mere possibility or remote possibility of prejudice, without more, is not enough to set aside the verdict." *Rowley v. Group Health Coop.*, 16 Wn. App. 373, 377, 556 P.2d 250 (1976). In any event, that question will doubtless not recur at the new trial.

■ The trial court did not err by giving the jury the three instructions on duty of care complained of, namely instructions 9 (WPI 70.01), 10 (WPI 70.06) and 11 (WPI 12.06). Each of these instructions correctly stated the law.

They did not "so repetitiously cover a point of law as to generate a gross overweighting in favor of one party . . .", *Hinkel v. Weyerhaeuser Co.,* 6 Wn. App. 548, 553, 494 P.2d 1008 (1972), since each one covered a somewhat different legal facet of the case. The trial court did not abuse the discretion reposed in it by giving those three instructions in this case. *See Harris v. Groth,* 31 Wn. App. 876, 881, 645 P.2d 1104 (1982), *aff'd,* 99 Wn.2d 438, 663 P.2d 113 (1983).

Reversed and remanded for a new trial.

SWANSON, J., and SODERLAND, J. Pro Tem., concur.

Review denied by Supreme Court September 7, 1984.