2016 OCT 17 AM 10: 06

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BILLY COLBURN, | ) | DIVISION ONE |
| Appellant, | ) ) | No. 74366-0-I |
| v. | ) ) | |
| DAVID J. TREES and JANE DOE TREES, husband and wife, and the marital community composed thereof, | ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) | FILED: October 17, 2016 |

DWYER, J. — Billy Colburn appeals from the summary judgment dismissal of his negligence claim against David Trees. Colburn's vehicle was struck by Trees' vehicle after Colburn made a left turn through an intersection, against oncoming traffic. On appeal, Colburn contends that genuine issues of material fact exist as to whether Trees acted negligently. Finding no error, we affirm.

I

On August 23, 2011, Colburn was traveling north on 23rd Avenue East, a north-south arterial roadway in Seattle. At the intersection of 23rd Avenue East and East John Street, Colburn made a left-hand turn through the intersection. While so doing, Colburn was struck by Trees, who was heading south on 23rd Avenue East. There were no designated turn lanes.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BILLY COLBURN, | ) | DIVISION ONE |
| Appellant, | ) ) ) | No. 74366-0-I |
| v. | ) ) | |
| DAVID J. TREES and JANE DOE TREES, husband and wife, and the marital community composed thereof, | ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) ) | FILED: |

DWYER, J. — Billy Colburn appeals from the summary judgment dismissal of his negligence claim against David Trees. Colburn's vehicle was struck by Trees' vehicle after Colburn made a left turn through an intersection, against oncoming traffic. On appeal, Colburn contends that genuine issues of material fact exist as to whether Trees acted negligently. Finding no error, we affirm.

I

On August 23, 2011, Colburn was traveling north on 23rd Avenue East, a north-south arterial roadway in Seattle. At the intersection of 23rd Avenue East and East John Street, Colburn made a left-hand turn through the intersection. While so doing, Colburn was struck by Trees, who was heading south on 23rd Avenue East. There were no designated turn lanes.

Trees initially approached the intersection in the left-hand lane. After seeing that a bus ahead of him in that lane was preparing to turn left at the intersection, Trees switched to the right-hand lane prior to entering the intersection. As Colburn and Trees each approached the intersection, the bus at least partially obscured each of their views of the intersection and oncoming traffic.

Colburn and Trees each proceeded into the intersection through a green light. Upon entering the intersection, Trees continued heading southbound, while Colburn made a left turn, crossing the southbound lanes. Although Trees attempted to swerve to avoid a collision, his vehicle struck Colburn's vehicle.

Trees, who was driving straight through the intersection, had the statutory right-of-way, making him the "favored driver." Colburn, who was turning left across traffic, was statutorily required to yield, making him the "disfavored driver."

On August 22, 2014, Colburn sued Trees in superior court for personal injuries and damages sustained in the collision. The trial court granted summary judgment in favor of Trees. Colburn appeals.

II

Colburn contends that the trial court erred in granting summary judgment in favor of Trees. We disagree.

We review a summary judgment order de novo, performing the same inquiry as the trial court. Larson v. Kyungsik Yoon, 187 Wn. App. 508, 512, 351 P.3d 167 (2015). Summary judgment is appropriate only if the supporting materials, viewed in the light most favorable to the nonmoving party, demonstrate

that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); Larson, 187 Wn. App. at 512. A "'complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

To establish a claim for negligence, a plaintiff must prove (1) the existence of a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff proximately caused by the defendant's breach. Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999) (citing Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 48, 914 P.2d 728 (1996)). Whether a duty exists is a question of law, but breach of a duty and proximate cause are generally questions of fact for the jury to answer. Hertog, 138 Wn.2d at 275. However, if "reasonable minds could not differ, these factual questions may be determined as a matter of law." Hertog, 138 Wn.2d at 275.

## A

Colburn contends that unresolved genuine issues of material fact exist. This is so, he asserts, because Trees violated eight different traffic codes and was negligent in a variety of ways, including speeding, driving inattentively, failing to engage his turn signal at least 100 feet before changing lanes, and swerving to the right upon entering the intersection. Each of these assertions is addressed in turn.

Colburn first asserts that Trees' speeding was a proximate cause of the collision.[1] However, a favored driver's speeding is not the proximate cause of a collision "if the favored driver's automobile is where it is entitled to be, and the favored driver would have been unable to avoid the collision even if driving at a lawful speed." Channel v. Mills, 77 Wn. App. 268, 277, 890 P.2d 535 (1995). "[S]peed is not a proximate cause if it does no more than bring the favored and disfavored drivers to the same location at the same time." Mills, 77 Wn. App. at 277. To make a showing that excessive speed was the proximate cause of a collision, "a claimant must produce evidence from which the trier of fact can infer the approximate point of notice." Mills, 77 Wn. App. at 279. The point of notice is the point in time at which a reasonable person exercising ordinary care would realize that the disfavored driver is not going to yield. Whitchurch v. McBride, 63 Wn. App. 272, 276, 818 P.2d 622 (1991).

Colburn has produced no evidence tending to establish when Trees' "point of notice" was. Colburn asserts that, had Trees decelerated to the lawful speed after making the lane change, he would have had 2.4 seconds to avoid the collision rather than the 1.2 seconds his actual speed afforded him. However, Colburn's evidence does not account for the time it takes to decelerate and does

---

[1] Subsections (1) and (3) of RCW 46.61.400 and SMC 11.52.020 collectively provide, in pertinent parts, that drivers shall drive at a reasonable and prudent speed using due care, and that drivers shall drive at an appropriately reduced speed when approaching and crossing an intersection. SMC 11.52.080 sets the maximum lawful speed on arterial streets in Seattle at 30 miles per hour.

Colburn submitted to the trial court a collision report written and signed under oath by the responding police officer, as well as a police traffic collision report instruction manual. Taken together, the report and instruction manual establish that the speed limit along 23rd Avenue East is 20 miles per hour. Trees stated in his deposition that he was traveling roughly 35 to 40 miles per hour.

not establish that 2.4 seconds was sufficient time for Trees to (1) see Colburn's vehicle, (2) appreciate the danger, and (3) initiate and complete a responsive movement so as to avoid the collision. Nor does Colburn produce any evidence that Trees' vehicle's excessive speed actually impacted Trees' point of notice. Absent evidence tending to establish when, and at what point on the roadway short of the intersection, Trees should have seen Colburn and recognized that Colburn was not yielding, Colburn cannot (and does not) contrast Trees' actions with that of a reasonable driver exercising ordinary care. Thus, he does not establish that Trees' speeding was a proximate cause of the collision.

Colburn next contends that Trees' delayed use of his turn signal constituted negligence and proximately caused the collision.[2]

Trees stated in his deposition that he engaged his turn signal roughly 20 feet before changing lanes. Despite admitting that he never saw Trees engage his turn signal, Colburn contends that, had Trees engaged his turn signal 80 feet earlier, as required by law, Colburn would have seen the turn signal and the collision would have been avoided.

There is no evidence in the record that Colburn would have seen such a properly-timed turn signal. Colburn stated in his deposition that he could see all around the bus.[3] Colburn also testified that he watched Trees' vehicle approach the bus in the left-hand lane, kept an eye on the bus, watched three vehicles enter and pass through the intersection in the lane closest to the curb, and turned

---

[2] RCW 46.61.305(2) requires drivers to engage a turn signal at least 100 feet before changing lanes. RCW 46.61.140(1) provides that drivers shall not change lanes until it is reasonably safe to do so.

[3] Colburn also testified that he could see Trees' vehicle by looking under the bus.

into the intersection without seeing that Trees had switched lanes. Colburn's testimony does not explain how he would have seen Trees' properly-timed turn signal while simultaneously observing the bus in one lane and observing three separate vehicles proceed into and through the intersection in the other lane. It is uncontested that Colburn never observed Trees' vehicle while its turn signal was activated or while it was in the curb lane approaching the intersection. Indeed, it is clear that, until the last of the three curb-lane vehicles entered the intersection, Colburn's attention was on both the bus and those three vehicles. Colburn's conclusory statement that he would have seen Trees' vehicle's turn signal and altered his own behavior, had the turn signal been activated 1.36 seconds earlier (the 80 feet traveled at 35 to 40 miles per hour), is without adequate factual support and does not create genuine issues of fact. Guile v. Ballard Cmty. Hosp., 70 Wn. App. 18, 25, 851 P.2d 689 (1993).

Colburn next contends that Trees violated RCW 46.61.140(1), which prohibits drivers from changing lanes until it is reasonably safe to do so. This claim is also without merit. The evidence is clear that Trees executed his lane change safely. Colburn cites no authority for the proposition that Trees' obligation to ensure that his lane change could be safely executed included an obligation to account for unlawful driving on the part of drivers traveling in the opposite direction on the other half of the arterial roadway.

Colburn also contends that Trees acted negligently by driving inattentively.[4] To support his claim, Colburn submitted the declaration of Tricia Tuttle, a driver who was directly behind Colburn and witnessed the collision. However, Tuttle's declaration is, at best, speculative. No facts are asserted in the declaration which establish a foundation on which inattentiveness can be predicated but, rather, Tuttle merely suggests that Trees was inattentive because Colburn had nearly completed his left turn before being struck and "would have been visible to Mr. Trees for several seconds." Conclusory statements are insufficient to establish a genuine issue of material fact, and Tuttle's declaration provided no facts supporting a tenable conclusion that Trees was inattentive.

Lastly, Colburn contends that Trees acted negligently upon seeing Colburn's vehicle by swerving to the right—the same direction as Colburn— rather than to the left, in the direction of the bus and oncoming traffic.

Negligence cannot be predicated on a reasonable, split-second decision, simply because an alternative decision may be more reasonable in hindsight. See Bowers v. Marzano, 170 Wn. App. 498, 506, 290 P.3d 134 (2012) ("Split-second computations of time, alone, lack sufficiency to prove the favored driver's negligence."); see also Mondor v. Rhoades, 63 Wn.2d 159, 167, 385 P.2d 722 (1963) ("[T]he right of way . . . is a strong one and ought not to be lost in the maze of details arising from split-second computation of time and distance.").

---

[4] SMC 11.58.008 prohibits "inattentive" driving. SMC 11.58.008 defines "inattentive manner" as "a manner so as to fail to maintain a careful lookout for persons or property in the direction of travel."

As with Colburn's other assertions of negligence, there is no evidence that the direction Trees swerved proximately caused the collision. Even assuming that Trees swerved to the right, Colburn has not established that it was possible for Trees to avoid the collision by turning to the left—or that it was unreasonable for Trees to turn to the right under the circumstances.

Accordingly, the trial court did not err by granting Trees' motion for summary judgment.

B

Colburn next asserts that the "deception doctrine" is applicable in this situation, effectively reducing his own liability and allowing him to recover against Trees under a theory of negligence. To the contrary, the deception doctrine does not apply.

Decades ago, pursuant to Washington's contributory negligence rules, in cases involving intersection collisions, a disfavored driver turning left could be found negligent per se, completely barring a recovery based on the favored driver's own negligence. See Sinclair v. Record Press, Inc., 52 Wn.2d 111, 115, 323 P.2d 660 (1958) ("[A]ny question of respondent's negligence, if any, is merely academic, in that the legal effect of the contributory negligence rule precludes recovery by the appellant in any event."). "[T]he deception doctrine developed in order to cushion the harsh effects of the negligence per se doctrine as applied to collisions resulting from left turns at or between intersections." Hammel v. Rife, 37 Wn. App. 577, 582, 682 P.2d 949 (1984). The deception doctrine is limited to matters in which a favored driver has "deceived a

reasonably prudent disfavored driver into believing that he or she can make a left turn with a fair margin of safety." Rife, 37 Wn. App. at 582 (citing Chapman v. Claxton, 6 Wn. App. 852, 856, 497 P.2d 192 (1972)). The favored driver's actions must be "tantamount to an entrapment, a deception of such marked character as to lure a reasonably prudent driver into the illusion that he has a fair margin of safety in proceeding into the intersection and on through it." Rhoades, 63 Wn.2d at 167. Excessive speed, without additional factors, is insufficient to show deception. Tobias v. Rainwater, 71 Wn.2d 845, 853, 431 P.2d 156 (1967).

The deception doctrine may apply in two situations. The first is when the disfavored driver actually sees the favored vehicle and is deceived by the actions of the favored driver. Rainwater, 71 Wn.2d at 853. However, "if one sees the favored vehicle only an instant before the collision, there is . . . no deception in the legal sense." Rainwater, 71 Wn.2d at 853.

The other situation is when there is a clear stretch of road, where "the disfavored driver, consistent with the primary duty of caution resting upon him, and consistent with the physical surroundings, carefully looked from a point of appreciable observation and could not see a negligently operated favored vehicle because of a physical obstruction upon or about the roadway." Ward v. Zeugner, 64 Wn.2d 570, 573, 392 P.2d 811 (1964).

Neither situation applies here.

First, Colburn's assertions do not match the "clear stretch of the road" situation. "[I]f the obstruction that blocks the view of the disfavored driver is one that reasonably can be expected to move, such as another occupied vehicle . . .

-9-

then the disfavored driver must permit the impairment to his view to move on so he can see the stretch of the road from which a favored driver might be approaching." Harris v. Burnett, 12 Wn. App. 833, 842, 532 P.2d 1165 (1975). Colburn's view of Trees' vehicle was obstructed by a bus—which would have eventually cleared the intersection and provided Colburn with an unobstructed view. Thus, Colburn's evidence fails to establish that the "clear stretch of the road" version of the deception doctrine applies.[5]

Second, Coburn's evidence does not establish that he saw Trees' vehicle and was deceived by Trees' actions. That Colburn saw Trees' vehicle in the left-hand lane with no turn signal engaged is not "tantamount to an entrapment," particularly given that Colburn never saw Trees' vehicle come to a stop behind the bus. Rhoades, 63 Wn.2d at 167. Trees never indicated that he would stop his vehicle behind the bus and Colburn is not entitled to rely on his own speculation as to Trees' intentions in order to show deception. Moreover, to the extent that the deception claim is premised upon Trees' failure to engage his turn signal 80 feet sooner, Colburn has not shown that he would have seen a properly-timed turn signal, as discussed above. Colburn did not set forth evidence implicating the deception doctrine.

---

[5] Colburn must also demonstrate negligence on the part of Trees, a subject already addressed. He failed to do so.

Affirmed.

We concur: