[No. 22531-0-II. Division Two. December 22, 1999.]
THE STATE OF WASHINGTON, *Respondent,* v. JOHN KEVIN McNEAL, *Appellant.*

*Thomas Edward Doyle* and *Robert M. Quillian*; and *Patricia Anne Pethick*, for appellant (appointed counsel for appeal).

*Jeremy Randolph, Prosecuting Attorney*, and *J. Andrew Toynbee, Deputy*, for respondent.

BRIDGEWATER, C.J. — John K. McNeal appeals his convictions for vehicular homicide, vehicular assault, and possession of a controlled substance with intent to deliver. The jury verdicts for vehicular homicide and vehicular assault were inconsistent. The jury, by special verdict, found that McNeal was not under the influence of drugs when he was operating the motor vehicle at the time of the accident. But, the jury also found that he was under the influence of drugs when he assaulted another victim in the same accident. We affirm both convictions because there was sufficient evidence to convict on both counts.

We also hold that there was sufficient evidence of intent to deliver, no proof of ineffective assistance of counsel, the exceptional sentences are justified, and the State may recoup the costs of appeal from McNeal. We affirm.

On July 5, 1996, Roxanne Jones and her mother were traveling eastbound on Bunker Creek Road on their way to Chehalis. As they crested a rise on a straight stretch of the road, Jones saw a car, driven by McNeal, coming toward her in her lane of travel. Making a split-second decision, Jones swerved into the westbound lane, attempting to avoid collision. She could not swerve right because a ditch banked the right side. Unfortunately, McNeal also swerved into the westbound lane and the two cars collided head-on.

Trooper Earvin Kraemer was the first to arrive at the scene. He quickly determined that although all three persons were injured, only Jones' elderly mother suffered a life-threatening injury. He assisted her until emergency medical personnel arrived. She later died.

After the two women were treated, he contacted McNeal where he lay on the road beside his car.[1] McNeal had suffered a broken arm and the bone could be seen protruding through the skin. Kraemer observed that McNeal was more lethargic than he would have expected for someone with such a serious injury. Kraemer asked McNeal for some identification, but McNeal claimed not to have any and gave Kraemer a false name and birthdate.

After determining that McNeal had given a false name, Kraemer decided to look for identification. Kraemer looked inside McNeal's car and saw a coat on the floor in front of the front passenger seat. Inside the coat pocket was a fanny pack, which contained four plastic baggies full of what was later determined to be methamphetamine, empty plastic baggies, a syringe containing a brown liquid, and a razor blade.

Trooper Dan Mann arrived and assisted in loading Mc-Neal into the back of an ambulance. Mann noticed some sort of bulge on McNeal's leg. Believing that this could be another injury, Mann felt the bulge and determined that it seemed to be a wallet. Mann pulled the object out and found it to be a large wad of cash. He found another wad of cash in the same location, for a total of $4,250. Mann asked Mc-Neal about the cash and McNeal claimed that he had cashed a check, but he could not remember the name of the bank. As he talked with McNeal, Mann was also struck by McNeal's demeanor, which was more subdued than he expected for the level of injury.

When he arrived at the hospital, McNeal was met by Trooper Jerry Kuzminsky, who placed McNeal under arrest. After reading McNeal his rights, Kuzminsky secured a

---

[1]McNeal argues that the car was not owned by him, but nevertheless the car McNeal was driving will hereinafter be referred to as "McNeal's car."

blood sample for testing. The blood test showed methamphetamine, a concentration of .31 milliliters per liter.

McNeal was charged with vehicular homicide, vehicular assault, possession of a controlled substance, and possession with intent to deliver. After a trial, the jury returned a verdict of guilty on all four charges. The court subsequently polled the jury and then dismissed the possession conviction. McNeal has challenged his three remaining convictions.

## I. Inconsistent Verdicts

McNeal challenges his convictions for vehicular homicide and vehicular assault, arguing that the jurors' specific finding that McNeal was not under the influence of drugs at the time of the accident for purposes of vehicular homicide is irreconcilably inconsistent with their implied finding that he was under the influence for purposes of the vehicular assault conviction.

McNeal was found guilty of vehicular homicide. The Jury was issued a special interrogatory on the vehicular homicide charge, which read:

> If you find the defendant guilty of vehicular homicide, you must answer the following question:
>
> At the time of causing the injury, was the defendant operating the motor vehicle
>
> (a) while under the influence of drugs?
>
> Answer: _____
>
> Yes or No
>
> (b) with disregard for the safety of others?
>
> Answer: _____
>
> Yes or No

To question (a), was the defendant under the influence of drugs, the jury replied, "No." To question (b), was the defendant acting with disregard for the safety of others, the

jury replied, "Yes." The jury also found the defendant guilty of vehicular assault, for which they must have also found that the defendant was under the influence of a drug while operating the vehicle.[2]

■ Prior to 1988, these admittedly inconsistent verdicts would have resulted in the reversal of the inconsistent general verdict. *See State v. O'Neil*, 24 Wn.2d 802, 167 P.2d 471 (1946). But Washington no longer follows that rule. *State v. Ng*, 110 Wn.2d 32, 750 P.2d 632 (1988). In *Ng*, the appellant argued that the jury's acquittal on a felony murder charge but conviction on the underlying robbery charge were inconsistent because the occurrence of the killings was not disputed. *Id.* at 45. The court agreed, but held that considerations of jury lenity and the folly of second-guessing the jury's reasoning required adoption of the rule declared in *Dunn v. United States*, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356, 80 A.L.R. 161 (1932). "[A] criminal defendant convicted by a jury on one count of a criminal accusation cannot attack that conviction because it is inconsistent with the jury's verdict of acquittal on another count." *Ng*, 110 Wn.2d at 45; *see also United States v. Powell*, 469 U.S. 57, 65, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984) (finding a variety of factors such as mistake, compromise or lenity can lead to a jury's inconsistent verdict, none of which require dismissal due to such a verdict). Therefore, under *Ng*, our only concern is whether both verdicts were supported by substantial evidence.

■ The State, relying on our earlier decision in *State v. Barnes*, 85 Wn. App. 638, 668, 932 P.2d 669, *review denied*, 133 Wn.2d 1021 (1997), asserts that this issue was waived because the defense did not object to the verdicts before the jury was discharged. McNeal argues that we should overrule *Barnes* and reverse the inconsistent general

---

[2]Jury Instruction 8 told the jury: "A person commits the crime of vehicular assault when he operates or drives any vehicle while under the influence of any drug, and this conduct is the proximate cause of serious bodily injury to another." The jury was not instructed on the alternate means for committing vehicular assault. *See* RCW 46.61.522 (recklessness).

verdict. In *Barnes*, the appellant did raise an issue of sufficiency. After finding the evidence sufficient to support the general verdict, the *Barnes* court held that it would not consider any additional arguments as to inconsistency. McNeal's argument suggests that we read *Barnes* to say that an appellant who makes a timely objection to an inconsistent verdict is entitled to relief on appeal. We disagree with that interpretation. Such a reading would be inconsistent with *Ng* and we do not believe it was intended by the *Barnes* court. And, we do not conclude that McNeal's entire challenge to the general verdict is waived because the question of substantial evidence may be raised for the first time on appeal as a manifest constitutional error. RAP 2.5 (a)(3); *State v. Baeza*, 100 Wn.2d 487, 488, 670 P.2d 646 (1983). Thus, the question of whether the verdicts were supported by substantial evidence was not waived and we will review this issue.

 Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.* at 201. Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

The only element of the vehicular assault count challenged is that McNeal was under the influence of drugs at the time of the accident. In this case, there was evidence that he had used methamphetamine sometime before the accident. The concentration of methamphetamine in his blood was .31 milliliters per liter. The State's expert, Dr. Barry Logan, testified that unlike alcohol, methamphetamine does not affect everyone the same way in the same concentrations. The most Dr. Logan could say was that methamphetamine use could produce symptoms that impair the ability to drive. But Dr. Logan described the

symptomology of methamphetamine use, which includes subdued behavior or lethargy. Three witnesses testified that McNeal was notably reserved at the time of the accident for someone with such severe injuries.

In addition, McNeal's driving indicated impairment—he crossed into oncoming traffic. In an extensive study of accidents caused by drivers under the influence of methamphetamine, Dr. Logan found that 85 percent of the drivers had left their lane of travel, which was the most common cause of the accidents. This evidence is sufficient to permit a rational trier of fact to find that McNeal was under the influence at the time of the accident.[3]

Furthermore, although McNeal has not challenged the sufficiency of the evidence for his conviction of vehicular homicide, we note that this conviction was also supported by substantial evidence. "Disregard for the safety of others" is a statutory term, which has been defined as an aggravated kind of negligence or carelessness, falling short of recklessness, but constituting a more serious dereliction than the minor inadvertences and oversights deemed ordinary negligence. *State v. Eike*, 72 Wn.2d 760, 765-66, 435 P.2d 680 (1967); *see also State v. Lopez*, 93 Wn. App. 619, 623, 970 P.2d 765 (1999). WPIC 90.05 defines it as driving "in a rash or heedless manner, indifferent to the consequences." The fact that McNeal was driving on the wrong side of the road, viewed in the light most favorable to the State, is itself sufficient evidence that at the time of the accident, he was acting with "disregard for the safety of others." *See State v. Miller*, 60 Wn. App. 767, 774, 807 P.2d 893 (1991). Thus, both convictions are supported by substantial evidence.

With this resolution, we do not reach the other related issue raised by McNeal with regard to ineffective assistance of counsel in failing to seek harmony of the inconsistent

---

[3]This result does not change even without considering the drugs, paraphernalia and cash found on McNeal and in his car.

verdicts by CrR 6.16(b).[4] An analysis under *Ng* discloses no error; therefore, there could be no ineffective assistance of counsel. In fact we note that if counsel had made such a motion, it probably would have resulted in greater penalties because the jury likely would have "harmonized" the verdicts by changing the special verdict to find that McNeal was under the influence, which would have resulted in a longer sentence. But we do not reach the issue of ineffective assistance of counsel; it is an inappropriate question.

The verdicts on both vehicular homicide and vehicular assault are affirmed.

## II. WARRANTLESS SEARCHES OF McNEAL AND HIS VEHICLE

■ ■ For the first time on appeal, McNeal challenges the admission of evidence seized in the warrantless searches of his person and the car he was driving. We do not review on appeal an alleged error not raised at trial unless it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3); *State v. Scott*, 110 Wn.2d 682, 686-87, 757 P.2d 492 (1988). An appellant must show actual prejudice in order to establish that the error is "manifest." *State v. Lynn*, 67 Wn. App. 339, 346, 835 P.2d 251 (1992). "Where the alleged constitutional error arises from trial counsel's failure to move to suppress, the defendant 'must show the trial court likely would have granted the motion if made. It is not enough that the Defendant allege prejudice[;] actual prejudice must appear in the record.' " *State v. Contreras*, 92 Wn. App. 307, 312, 966 P.2d 915 (1998) (quoting *State v. McFarland*, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995)). "[W]hen an adequate record exists, the appellate court may carry out its long-standing duty to assure constitutionally adequate trials by engaging in review of manifest

---

[4]CrR 6.16(b) states: "Special Findings. The court may submit to the jury forms for such special findings which may be required or authorized by law. The court shall give such instruction as may be necessary to enable the jury both to make these special findings or verdicts and to render a general verdict. When a special finding is inconsistent with another special finding or with the general verdict, the court may order the jury to retire for further consideration."

constitutional errors raised for the first time on appeal." *Contreras*, 92 Wn. App. at 313. But "[i]f the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." *McFarland*, 127 Wn.2d at 333 (citing *State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993)). Thus, "each Defendant must show the motion likely would have been granted based on the record in the trial court[.]" *McFarland*, 127 Wn.2d at 334 n.2.

The record here is insufficient for review; it does not fully show the officers' reasons for conducting the searches. Because we cannot determine from this record whether the searches were justified by medical necessity, as the State has argued, or otherwise, we cannot review McNeal's claim that counsel was ineffective for failing to bring a motion to suppress. The proper avenue for McNeal to raise this issue is by personal restraint petition, in which case we could order an additional factual hearing under RAP 16.11.

### III. SUFFICIENT EVIDENCE OF INTENT TO DELIVER

McNeal has also argued that his conviction for possession with intent to deliver should be reversed due to insufficient evidence of intent to deliver. There was sufficient evidence for the conviction.

In the car McNeal was driving, the police found four plastic baggies full of methamphetamine, a syringe full of liquid amphetamine, a razor blade, and four empty baggies. Police also found $4,250 on McNeal. The presence of empty baggies and a cutting tool, according to Officer Kraemer, indicates that the drugs were being packaged for sale. In addition, Kraemer testified that because the four full baggies were of the same weight, they were likely for sale rather than personal use. Large amounts of cash found in proximity to controlled substances also indicates sale and distribution, according to Officer Mann. Although McNeal argues that the drugs were not his and that the money was not from drug proceeds, credibility determinations are for

the trier of fact and the evidence is sufficient to support the conviction for possession with intent to deliver.

## IV. DISMISSED CONVICTION

At the close of the case, the jury returned guilty verdicts both on the possession with intent to deliver charge and its lesser-included offense, possession. After polling the jury, the judge dismissed the possession conviction as "superfluous" and a "nullity." McNeal argues in his pro se brief that the trial court erred, that instead of dismissing only the possession conviction, it should have dismissed both convictions. He asserts that the two verdicts show that the jury had reasonable doubt. The State contends that the jury was polled and found to be unanimous, and therefore they must have found McNeal guilty beyond a reasonable doubt.

■ It is difficult to evaluate the merit of the State's argument because we do not have a record of the jury poll. But it appears that McNeal agrees at least that the jury was polled on the possession with intent to deliver conviction.[5] Thus, even if McNeal is correct, if the jury was polled and found unanimous on the possession with intent to deliver conviction, then his challenge to this conviction fails. " '[S]ince the jury was polled, there is no doubt that the verdict was unanimous and was the result of each juror's individual determination.' " *State v. Havens*, 70 Wn. App. 251, 257, 852 P.2d 1120 (quoting *State v. Badda*, 63 Wn.2d 176, 182, 385 P.2d 859 (1963)), *review denied*, 122 Wn.2d 1023 (1993); *see also Butler v. State*, 34 Wn. App. 835, 838, 663 P.2d 1390 (jury poll is tantamount to a final vote), *review denied*, 100 Wn.2d 1009 (1983); RCW 4.44.390 (if the number of jurors required for verdict answer that it is the verdict said verdict shall stand). Furthermore, having reached a verdict on the greater offense, the jury had necessarily decided the elements of the lesser included offense.

---

[5]McNeal does not believe that the jury was polled on the possession conviction.

*State v. Green*, 94 Wn.2d 216, 234, 616 P.2d 628 (1980). Therefore, the trial court did not err.

## V. EXCEPTIONAL SENTENCE

The trial court imposed two exceptional sentences: an above-range sentence for the possession with intent to deliver conviction and consecutive sentences. McNeal was sentenced as follows:

| Count | Charge | Standard Range | Maximum | Sentence Imposed |
|-------|--------|----------------|---------|------------------|
| I | Vehicular Homicide | 87-116 months | Life | 116 months |
| II | Vehicular Assault | 63-84 months | 120 months | 84 months |
| III | Possession with Intent to Deliver | 108-144 months | 240 months | 240 months |

**440 months**

McNeal challenges the court's imposition of exceptional sentences, arguing that the court's reasons are not supported by factual findings and are not legally sound.

■ Under the Sentencing Reform Act of 1981, a trial court must impose a sentence within the standard range unless it finds substantial and compelling reasons to justify a departure. RCW 9.94A.120(2); *State v. Grewe*, 117 Wn.2d 211, 214, 813 P.2d 1238 (1991). RCW 9.94A.210(4), which governs appellate review of an exceptional sentence, provides:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

*See also State v. Johnson*, 124 Wn.2d 57, 65-66, 873 P.2d 514 (1994). RCW 9.94A.390(2) lists several aggravating factors the trial court may consider in imposing an exceptional

sentence. The listed statutory factors are not exclusive, but are illustrative only. *Johnson*, 124 Wash.2d at 66.

In this case, the court gave two reasons for the exceptional sentences: (1) the standard sentence would be clearly too lenient because the multiple offense policy would result in two offenses essentially going unpunished, citing *State v. Stephens*, 116 Wn.2d 238, 243, 803 P.2d 319 (1991) (apparently justifying the consecutive sentences); and (2) McNeal's extensive criminal history indicates his failure to take advantage of opportunities to "improve himself," (apparently justifying the exceptional sentence on the conviction for possession with intent to deliver).

The trial court was concerned that running the three sentences concurrently, as RCW 9.94A.400(1)(a) would dictate, would be too lenient because the vehicular homicide and vehicular assault convictions would not add to McNeal's sentence because the sentence for possession with intent to deliver was already at the maximum sentence with an offender score over nine. The State's sentencing memorandum reflects the following calculation of offender score:

| Charge | Offender Score Excluding Other Current Offenses | Offender Score Including Other Current Offenses |
|---|---|---|
| Vehicular Homicide | 9 | 11 |
| Vehicular Assault | 9 | 11 |
| Possession with Intent to Deliver | 13 | 15 |

Thus, the operation of RCW 9.94A.400, which allows other current offenses to be counted in the total offender score of each offense, but requires that the sentences be served concurrently (absent exceptional findings), creates a result where the sentence for possession with intent to deliver eclipses the other two because McNeal's offender score for that charge already exceeded nine, which is the maximum score accounted for in the sentencing grid. It is for this reason that the trial court imposed an exceptional sentence.

In *Stephens*, the Supreme Court validated the imposi-

tion of an exceptional sentence "when a defendant's multiple current convictions, combined with his high offender score, would otherwise result in there being no additional penalty for some of his crimes." 116 Wn.2d at 240. This case is directly analogous to *Stephens* and therefore the trial court did not err when it used this reason to justify running the sentences consecutively.

 McNeal also challenges the trial court's finding that he had failed to take advantage of past opportunities to reform, justifying an exceptional sentence on the possession with intent to deliver charge. A sentencing court may not rely on a prediction of future dangerousness to justify an exceptional sentence. *State v. Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991). But a sentencing court may use a defendant's "particularized knowledge" gained from the circumstances of a prior conviction to find that the defendant had greater mental culpability than others convicted of the same offense. *State v. Bartlett*, 128 Wn.2d 323, 333-34, 907 P.2d 1196 (1995). A defendant's especially culpable state of mind is a substantial and compelling reason justifying an exceptional sentence. *Id.* at 334. A defendant's awareness of a substance abuse problem, coupled with an unwillingness to take steps to correct that problem, makes him more culpable than contemplated by the standard sentence range and therefore can be used to justify an exceptional sentence. *State v. Quiros*, 78 Wn. App. 134, 896 P.2d 91, *review denied*, 127 Wn.2d 1024 (1995); *but see State v. Bolton*, 68 Wn. App. 211, 214-15, 842 P.2d 989 (1992) (callous disregard of consequences of substance abuse in essence means defendant would continue substance abuse and be dangerous in the future).

McNeal's extensive history of drug abuse, shown by his criminal record, shows that he was especially culpable. Prior to this offense, McNeal had six prior adult drug-related convictions over the course of six years. He also had nine juvenile convictions for drug-related offenses. Clearly, McNeal was on notice that he had a problem with drugs that led to violations of the law, but still he failed to correct

the problem, and this shows that he was especially culpable when he used methamphetamine and then got behind the wheel of a car. Thus, the record supports the trial court's finding, which amounts to a finding of callous disregard, and this finding supports an exceptional sentence.

## VI. Costs

The State has asked that McNeal be ordered to reimburse the State for the cost of his appeal. RCW 10.73.160 allows the appellate court to order a convicted indigent defendant to pay his or her appellate costs, including the fees for appointed counsel. Therefore, the State is entitled to recoup the costs of appeal from McNeal.

The convictions and sentences are affirmed.

MORGAN and HOUGHTON, JJ., concur.

Review granted at 140 Wn.2d 1013 (2000).