[No. 43864-6-I.   Division One.   May 1, 2000.]
THE STATE OF WASHINGTON, *Respondent*, v. ROGER WILLIAM SOUTHER, *Appellant*.

---

*Julie Anne Gaisford* and *Nancy Lynn Talner*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Catherine Marie Myers, Deputy*, for respondent.

WEBSTER, J. — We affirm Appellant Roger William Souther's conviction for vehicular homicide. Souther's blood alcohol content tested at 0.29 grams/100 milliliters after the accident wherein his pickup truck collided with the motorcycle that Matthew Chumley was driving. The trial court imposed an exceptional sentence of 20 years based on Souther's unusually high blood alcohol content and his increased mental awareness of the consequences of driving while under the influence, which demonstrated an unusually high level of mental culpability. In response to Souther's challenges, we find (1) that any error in jury instructions was harmless, (2) that the prosecutor did not misstate the law in closing argument and Souther demonstrates no prejudice, and (3) that the trial court gave a sufficient reason for imposing an exceptional sentence and did not abuse its discretion in giving a 20-year sentence.

## BACKGROUND

### A. Evidence at Trial Relevant to the Appeal

The accident occurred in Seattle on 24th Avenue Northwest while Souther was traveling northbound in his pickup truck and the victim was traveling southbound on his motorcycle. Both parties had a green light at the intersection of Northwest 65th Street. Souther attempted to make a left turn and collided with the victim. The motorcycle was pinned under the truck. The victim died at the scene from head injuries.

The defendant's expert, a registered engineer and accredited traffic accident reconstructionist, testified that he determined from examining the motorcycle wreckage that its turn signal was on at the time of impact. 11 Report of Proceedings (RP) at 44-47. He also testified that the motorcycle was traveling at 35 to 45 miles per hour. 11 RP at 21. The police accident reconstructionist testified that whether the victim's turn signal was on at the time of impact could not be determined. 8 RP at 111, 114-15. Another police collision reconstructionist testified that the victim was traveling between 25 and 31 miles per hour. 9 RP at 32. The speed limit was 30 miles per hour, and traffic usually flows between 25 to 35 miles per hour in this area. 6 RP at 89-90.

Souther's blood alcohol content tested at 0.29 grams/100 milliliters. 7 RP at 151.

B.   Sentencing

Souther's standard range sentence was 41 to 54 months. The trial court imposed an exceptional sentence of 20 years. The trial court found two substantial and compelling reasons on which to base the exceptional sentence: (1) Souther's unusually high blood alcohol content of 0.29 grams/100 milliliters; and (2) Souther's increased mental awareness of the consequences of driving while under the influence, which demonstrated an unusually high level of mental culpability. Clerk's Papers (CP) at 185.

## ANALYSIS
### I. Jury Instructions

A.   Superseding Cause Instruction

Souther argues that the trial court erred: (1) by providing an instruction on superseding cause that unfairly emphasized the State's theory of the case and failed to clearly explain the law supporting the defense theory of the case; and (2) by refusing to give his proposed alternative instruction on superseding cause. We begin by examining the instructions given and proposed.

Jury instruction 12 defined proximate cause:

> To constitute vehicular homicide, there must be a causal connection between the death of a human being and the criminal conduct of a defendant so that the act done or omitted was a proximate cause of the resulting death.
>
> The term "proximate cause" means a cause which, in a direct sequence, unbroken by any new independent cause, produces the death, and without which the death would not have happened.
>
> There may be more than one proximate cause of a death.

CP at 37. This instruction is taken from 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (WPIC) 25.02, at 276 (2d ed. 1994).

Jury instruction 13 informed the jury regarding a superseding cause as follows:

> If you are satisfied beyond a reasonable doubt that the acts of the defendant were a proximate cause of the death of the deceased, it is not a defense that the conduct of the deceased may also have been a proximate cause of the death.
>
> If a proximate cause of the death was a later independent intervening act of the deceased or another which the defendant, in the exercise of ordinary care, could not have reasonably anticipated as likely to happen, the defendant's acts are superceded [sic] by the intervening casue [sic] and are not a proximate cause of the death.
>
> However, if in the exercise of ordinary care, the defendant should reasonably have anticipated the intervening cause, that cause does not supersede defendant's original acts and defendant's acts are a proximate cause. It is not necessary that the sequence of events or the particular injury be foreseeable. It is only necessary that the death fall within the general field of danger which the defendant should have reasonably anticipated.

CP at 38. This instruction is taken verbatim from WPIC 25.03.

Souther proposed an instruction that included the first two paragraphs of instruction 13 but omitted the third paragraph. CP at 203. The WPIC note on the use of this instruction indicates that the second paragraph should be

used if the evidence permits a finding that there was a superseding or intervening cause of death and that the third paragraph should be used only where there is a question whether the harm fell within the general field of danger that should have been foreseen.

Souther proposed an alternative superseding cause instruction, which the trial court rejected:

It is a defense to the charge of vehicular homicide that the death was caused by a superseding, intervening event.

CP at 21.

Preliminarily, the State argues that Souther is precluded from challenging any part of instruction 13,[1] informing the jury about superseding cause, because he did not specifically object to this instruction below. The defense stated its exceptions to the jury instructions on the record:

We object to the form of instruction no. 12. We had submitted 25.02 to modify, on the basis of the facts in this case because of evidence of the superceding [sic] cause.

The giving of more than one proximate cause waters down the State's burden to prove the case beyond a reasonable doubt on the facts of this particular case as charged.

. . . .

And we object to the court not giving, which we believe would further explain the duties and rules of the road, 70.02, 01, 95.03, and our explanation relying on State v. Rivas, making it clear to the jury that a superseding intervening act is [a defense] to vehicular homicide. . . .

12 RP at 3-4.

Souther proposed an instruction similar to instruction 13 that omitted the third paragraph, proposed an alternative superseding cause instruction, and indicated that by refus-

---

[1]The State asserts that Souther is challenging on appeal only the third paragraph of instruction 13. This is not entirely clear from Souther's briefs. It appears that he objects to the phrasing of the entire instruction, arguing generally that it is unclear regarding superseding cause. We do not limit Souther's argument to the third paragraph as the State suggests.

ing to give the alternative instruction, the court failed to make clear to the jury that a superseding intervening act is a defense to vehicular homicide. We find that Souther's objections were sufficient to alert the trial court to his argument that the instructions on superseding cause were not clear. *See State v. Cantabrana*, 83 Wn. App. 204, 208, 921 P.2d 572 (1996) (stating that although the defendant objected at trial to only one of the two instructions challenged on appeal, the objection should have alerted the trial judge to the defect that appeared in both instructions). Thus, we turn to the merits of Souther's arguments.

■ ■ "Instructions satisfy the requirement of a fair trial when, taken as a whole, they properly inform the jury of the applicable law, are not misleading, and permit the defendant to argue his theory of the case." *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999). A trial court's decision regarding a jury instruction is reviewed for abuse of discretion if the decision is based on factual issues. *See State v. Walker*, 136 Wn.2d 767, 772-73, 966 P.2d 883 (1998). A trial court's decision regarding a jury instruction is reviewed de novo where the decision is based on a ruling of law. *See id.* at 773.

Souther argues that the instructions here do not make it manifestly apparent to the jury that a superseding cause is a defense to vehicular homicide. *See State v. Corn*, 95 Wn. App. 41, 53, 975 P.2d 520 (1999) ("jury instructions must make the relevant legal standard manifestly apparent to the average juror"). He asserts that the sentence informing what constitutes a superseding cause is buried between sentences explaining when a superseding cause is not a defense. He claims error in the giving of instruction 13 and in the court's rejection of his proposed alternative.

■ We agree that the instruction on superseding cause is confusing. The law establishes that "contributory negligence is not a defense to negligent homicide." *State v. Judge*, 100 Wn.2d 706, 718, 675 P.2d 219 (1984). But an intoxicated defendant may avoid responsibility for a death resulting from the defendant's driving if the death was

caused by a superseding intervening event. *See State v. Rivas*, 126 Wn.2d 443, 453, 896 P.2d 57 (1995). To escape liability, the defendant must show that the deceased's contributory negligence was a supervening cause without which the defendant's contributory negligence would not have caused the accident. *See Judge*, 100 Wn.2d at 718. The first two sentences of the instruction here appear to be contradictory. Although an intoxicated defendant may avoid responsibility for a death resulting from the defendant's driving if the death was caused by a superseding intervening event, the first sentence of WPIC 25.03 appears to tell the jury the opposite: it states that if the acts of the defendant were a proximate cause of the death of the deceased, it is *not* a defense that the conduct of the deceased may also have been a proximate cause of the death. The next sentence of the instruction appears to contradict the first sentence because it tells the jury that if a proximate cause[2] of the death was a later independent intervening act of the deceased that the defendant could not have reasonably anticipated, the defendant's acts are superseded by the intervening cause and are not a proximate cause of the death. Thus, the second sentence tells the jury that conduct by the deceased that is a proximate cause of the death *is*, in effect, a defense if such conduct was a later independent intervening act not reasonably foreseeable. Turning to the third paragraph, we find that although it is partially redundant to the second paragraph it does not unduly emphasize the State's case over the defendant's.

■ But we need not decide whether giving the instruction as a whole constituted an abuse of discretion because we find that any error was clearly harmless. Even if an instruction as a whole is so confusing and misleading as to constitute error of constitutional magnitude, it is harmless "if the reviewing court is convinced beyond a reasonable doubt that the same result would have been reached in the

---

[2]Note that that the instruction says "a" proximate cause not "the" proximate cause. Thus, the second sentence acknowledges that there may be more than one proximate cause and that if one of those is an independent intervening act of the deceased, the defendant may not be responsible for the death.

absence of the error." *See State v. Deal*, 128 Wn.2d 693, 703, 911 P.2d 996 (1996). We are so convinced here.

Souther's theory at trial was that the victim's speed or possible display of a left turn signal was an intervening superseding cause of the death. But neither the victim's speed nor display of a left turn signal may be an intervening cause. "An intervening cause may be defined as a force that actively operates to produce harm to another *after* the actor's act or omission has been committed." *Klein v. Pyrodyne Corp.*, 117 Wn.2d 1, 17 n.7, 810 P.2d 917, 817 P.2d 1359 (1991) (citing RESTATEMENT (SECOND) OF TORTS § 441(1) (1977), defining "intervening cause" in the negligence context) (emphasis added).[3] *See also* RESTATEMENT (SECOND) OF TORTS § 440 (1964) ("A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his *antecedent* negligence is a substantial factor in bringing about" (emphasis added)). Keeton has this to say about an intervening cause:

> "Intervening" is used in a time sense; it refers to later events. If a defendant sets a fire with a strong wind blowing at the time, which carries the fire to the plaintiff's property, the wind does not intervene, since it was already in operation; but if the fire is set first, and the wind springs up later, it is then an intervening cause.

W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 44, at 301 (5th ed. 1984).

Here, even if the victim was exceeding the speed limit and even if he displayed a turn signal, these actions were in existence prior to Souther's act and cannot be considered *intervening* causes. Although the victim's speed or turn signal may have been *concurring* causes, contributing to death, Souther has pointed us to no authority stating that a concurring cause shields a defendant from responsibility

---

[3]A force set in motion at a time earlier than the actor's original negligence is an intervening force if it first operates after the actor loses control of a situation and neither knew nor should have known of its existence at the time of his original negligent conduct. *See* RESTATEMENT (SECOND) OF TORTS § 441(1) cmt a.

for vehicular homicide. In conclusion, we find any error harmless because the facts claimed by Souther to give rise to a superseding intervening cause do not do so.

B.   Instruction on the Duties of Left-Turning Drivers

The trial court also rejected Souther's proposed instruction based on 6 WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL (WPI) 70.02.01, at 448 (3d ed. 1989) concerning the duty of a driver making a left turn and the deception doctrine:

> A statute provides that a driver intending to turn to the left within an intersection shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard. The right of way, however, is not absolute but relative, and the duty to exercise ordinary care to avoid collisions at intersections rests upon both driver [sic]. The primary duty, however, rests upon the driver turning to the left, which duty must be performed with reasonable regard to the maintenance of a fair margin of safety at all times.

> If the oncoming driver wrongfully, negligently, or unlawfully operates the vehicle in such a manner that it would deceive a reasonably careful drive [sic] making the left turn, so as to cause that driver to proceed forward on the assumption that there was a fair margin of safety, and if the driver turning left is in fact so deceived, then the right of way rule would not apply in favor of the oncoming driver.

CP at 20.

Souther contends that the trial court's refusal to give this instruction precluded him from arguing his theory of the case. He argues alternatively in his reply brief that he was entitled to at least the first paragraph of the instruction. We turn first to the deception doctrine.

■ We find that the trial court did not abuse its discretion by refusing to instruct the jury on the deception doctrine given the facts of this case. The deception doctrine was developed to "cushion the harsh effects of the negligence per se doctrine as applied to collisions resulting from left turns at or between intersections." *Hammel v. Rife*, 37 Wn. App. 577, 582, 682 P.2d 949 (1984). The doctrine is ap-

plied only where an oncoming driver has by some wrongful driving conduct deceived a reasonably prudent left-turning driver into believing that the turn can be made safely. *See id.* Application of the doctrine is limited to those situations where the oncoming driver's deception is " 'tantamount to an entrapment, a deception of such marked character as to lure a reasonably prudent driver into the illusion that he has a fair margin of safety in proceeding.' " *Id.* (quoting *Mondor v. Rhoades*, 63 Wn.2d 159, 167, 385 P.2d 722 (1963)). The doctrine is limited to only two factual scenarios. *See Hammel*, 37 Wn. App. at 582. First, where the left-turning driver *sees* the oncoming driver but is deceived by the actions of the driver. *See id.* Under this avenue, the doctrine does *not* apply where the left-turning driver does not look or fails to see what was "obviously there to be seen" because one cannot be deceived by what one does not see. *See id.* (internal quotation marks and citation omitted). And if the left-turning driver sees the oncoming vehicle only an instant before the collision, there is no deception. *See id.* The second factual scenario where the doctrine applies is where the left-turning driver is deceived by a clear stretch of road. *See id.* Under this avenue, the left-turning driver carefully looks, consistent with his duty of caution, but does not see a negligently operated oncoming vehicle due to a physical obstruction on or about the roadway. *See id.*

Here, Souther has not argued that there was any physical obstruction on or about the road, thus we look only to the first scenario. Souther contends that the deception lies in the victim's speed and possible display of a left turn signal. But "[e]xcessive speed on the part of the [oncoming] driver is not sufficient, by itself, to justify the submission of the issue of deception to the jury." *See Mendelsohn v. Anderson*, 26 Wn. App. 933, 937, 614 P.2d 693 (1980). Further, although drivers often turn left in front of an oncoming vehicle simultaneously turning left, Souther has pointed us to no authority that this practice relieves the left-turning driver of responsibility where an oncoming driver fails to turn. We find that the evidence of the victim's

possible display of a left-turn signal does not warrant a finding that the trial court abused its discretion in rejecting the deception doctrine instruction. Finally, evidence indicated that Souther made conflicting statements to police officers: first that the motorcycle was "screaming down the street" and "this guy was going 90 miles per hour," but then "I didn't see him until he hit me." 10 RP at 22, 32-33, 49. Either way, the deception doctrine does not apply because either Souther saw that the motorcycle was going too fast or he did not see it until the collision.

Furthermore, we find that any error by the trial court in refusing to give the first paragraph of WPI instruction 70.02.01 on the duties of left-turning drivers is harmless. Without the deception doctrine, the instruction on the duties of left-turning drivers does little to help Souther. Even if the jury had been made aware that the victim also had a duty to exercise ordinary care to avoid a collision at an intersection and even if the jury believed that the victim was also tuning left, placing upon him the same duty that was upon Souther, Souther is not helped because contributory negligence that is not intervening, but concurring, is not a defense to vehicular homicide.

## II. Closing Argument

During closing argument, the prosecutor made the following comments while discussing the elements of the offense:

> The driving proximately caused injury to Matthew. What does that mean? That means that anything that the defendant did, anything that the defendant did that caused Matthew's injury, entering the intersection when it was hazardous to do so, turning left into oncoming traffic, anything at all, making [sic] him guilty of the crime of vehicular homicide.

> It doesn't matter if you think Matthew—if you believe that Matthew was going over the speed limit. If Matthew contributed. [sic] If you think that somehow Matthew contributed to this collision because he was going over the speed limit, and if

he had not been going over the speed limit, maybe he could have avoided it, that doesn't matter in the state of Washington.

Even if you think he contributed to it. [sic] Heck, even if you think, if you believe that the—that Matthew was 99 percent responsible for the collision, if you find that Roger Souther was even one percent responsible, he's guilty— [defense objection]—of vehicular homicide.

12 RP at 17-18. The objection was overruled.

Souther moved for a new trial based on the claimed prosecutorial misconduct. The trial court denied the motion, finding no error. The court added that any error was not prejudicial and was therefore harmless.

█ Statements made during closing argument that pertain to the law must be confined to the law set forth in the instructions. *See State v. Davenport*, 100 Wn.2d 757, 760, 675 P.2d 1213 (1984). Souther argues here that the prosecutor went beyond the law provided in the instructions when she argued that the jury could convict Souther even if it found that he was only one percent responsible for the accident and Chumley was 99 percent responsible because the instructions did not discuss proximate cause or superseding cause in terms of percentages. Souther further argues that the prosecutor's comments are improper because they misstate the law.

██ We review the trial court rulings on allegations of prosecutorial misconduct for an abuse of discretion. *See State v. Finch*, 137 Wn.2d 792, 839, 975 P.2d 967, *cert. denied*, 528 U.S. 922, 120 S. Ct. 285, 145 L. Ed. 2d 239 (1999). "In making such a challenge the defendant bears the burden of establishing that the prosecutor's conduct was both improper and prejudicial." *Id.* Improper conduct by the prosecutor constitutes prejudicial error only where we determine that there is a substantial likelihood that the misconduct affected the jury's verdict. *See id.* A prosecutor's allegedly improper remarks must be reviewed in "the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions

given to the jury." *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007, 118 S. Ct. 1192, 140 L. Ed. 2d 322 (1998).

While the jury instructions here did not discuss negligence in terms of percentages, contributory negligence is not a defense to vehicular homicide. Thus, the prosecutor's comment was not a misstatement of the law. Souther has not demonstrated prejudice.

Furthermore, the jury in this case was instructed to disregard any remarks by the attorneys not supported by the law as stated by the court. CP at 25. The jurors were instructed that they were to apply the law as given by the court. CP at 24.

## III. Sentencing

Souther argues that the reasons provided by the trial court do not justify the exceptional sentence imposed. He challenges: (1) application of the aggravating factor of special knowledge or increased awareness, and the trial court's consideration of facts underlying prior convictions, prior treatment, and court orders in support of increased awareness; (2) reliance on convictions counting in his offender score; (3) the consideration of unscored misdemeanors; and (4) the conclusion that his high blood alcohol content constitutes a substantial and compelling reason for the exceptional sentence. Souther also argues that the length of the exceptional sentence is excessive.

Our review of an exceptional sentence is governed by statute:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

RCW 9.94A.210(4).

A. Imposition of an Exceptional Sentence

 1. *Special Knowledge and Increased Awareness*

The trial court concluded that Souther's conduct was "particularly egregious given the increased mental awareness of the consequences of driving while under the influence" and that he possessed an "unusually high level of mental culpability." CP at 185. The court summarized the facts that led to this conclusion:

> 2. The defendant has a twenty-five year history of alcohol and driving related crimes. His crimes include a 1973 Involuntary Manslaughter involving driving under the influence, three DUI's [sic] (1982, 1984, and 1995) and one DUI deferred prosecution (1991). These crimes demonstrate the defendant's special knowledge of the consequences of driving under the influence of alcohol. A knowledge enhanced by alcohol treatment which was part of the deferred prosecution and by numerous court orders that he not drink alcohol and that he not drive without a valid license.

> 3. The defendant's criminal history includes several unscored misdemeanor crimes that involved alcohol and driving. These include two of the DUI's [sic] (1982 and 1984), Negligent Driving (1984), Driving With A Suspended License (1984). These crimes also indicate the defendant's increased mental awareness of the consequences of driving under the influence of alcohol.

CP at 184.

Although a court may not use the fact of a prior conviction alone to impose an exceptional sentence, it may draw from the facts of prior convictions relating to the present case to show extraordinary circumstances justifying the exceptional sentence. *See State v. Bartlett*, 128 Wn.2d 323, 333, 907 P.2d 1196 (1995). "[A] distinction can be made between merely considering the fact of the prior conviction and considering the particularized knowledge gained by [the defendant] from the circumstances upon which the prior conviction was based." *Id.* In *Bartlett*, the defendant received an exceptional sentence upon conviction for the second degree murder of his three-week-old son, who died

after sustaining severe head injuries consistent with being violently shaken. *See id.* at 326-27. One of the trial court's reasons for the exceptional sentence was that the defendant exhibited an especially culpable mental state. *See id.* at 328. The trial court based its conclusion on facts surrounding the defendant's conviction several years earlier for second-degree assault upon his then two-month-old son from which the infant suffered permanent brain damage. *See id.* The *Bartlett* court affirmed, stating:

> The primary consideration for the exceptional sentence was not the fact of the prior conviction, but a recognition that the injury [the defendant] inflicted upon his older son . . . put him on special notice of the serious risk to infants which he disregarded when he shook his younger son . . . with violent force. From these circumstances, the trial court concluded [the defendant] evidenced an especially culpable mental state to an extent not considered in calculating his offender score.

*Id.* at 333.

Souther argues that the trial court's reliance on *Bartlett* is misplaced because the "particularized knowledge" essential to the *Bartlett* ruling is not present here. He distinguishes *Bartlett* on the grounds that, in that case, the details of the prior conviction, the violent shaking of an infant, were similar to the details of the current conviction, but here, the details of Souther's prior DUI convictions and manslaughter conviction are not the same as the current offense. He contends that the details of the prior DUI convictions are not the same because no injuries resulted. He asserts that the details of the prior manslaughter conviction is not the same because that incident involved speeding and crossing the center line, where here, Souther used his left turn signal and proceeded very slowly through the intersection. He also suggests that the special knowledge rationale of *Bartlett* has very limited application and does not apply to the circumstances here.

But nothing in the *Bartlett* decision indicates that it is limited to the facts of that case. A very recent opinion from this court relies in part on *Bartlett* in affirming an

exceptional sentence imposed on a conviction for possession with intent to deliver. *See State v. McNeal*, 98 Wn. App. 585, 599-600, 991 P.2d 649 (1999).[4] The trial court in that case gave as one basis for its exceptional sentence that "[the defendant's] extensive criminal history indicates his failure to take advantage of opportunities to 'improve himself.' " *Id.* at 598. The appellate affirmed, stating:

> [The defendant's] history of drug abuse, shown by his criminal record, shows that he was especially culpable. Prior to this offense, McNeal had six prior adult drug-related convictions over the course of six years. He also had nine juvenile convictions for drug-related offenses. Clearly, McNeal was on notice that he had a problem with drugs that led to violations of the law, but still he failed to correct the problem, and this shows that he was especially culpable when he used methamphetamine and then got behind the wheel of a car.

*Id.* at 599-600.

Souther's arguments that *Bartlett* does not apply here are unpersuasive. The consistent detail of all the prior convictions is the fact that he was driving while under the influence of alcohol. The particularized knowledge that Souther should have gained from the manslaughter and DUI convictions is that driving while intoxicated is unacceptable, dangerous, and may result in death. The trial court distinguished between the particularized knowledge gained by Souther from the prior convictions and the fact of the prior convictions themselves. We find that the trial court properly relied on the aggravating factor of special knowledge or increased awareness and properly concluded that Souther exhibited an especially culpable mental state

---

[4]In *McNeal*, the defendant was convicted of vehicular homicide, vehicular assault, and possession with intent to deliver. *See id.* at 588. The verdicts for vehicular homicide and vehicular assault were inconsistent, and the jury found that the defendant was not under the influence of drugs when operating the motor vehicle at the time of the accident but was under the influence of drugs when he assaulted another victim in the same accident. *See id.* at 598. The trial court imposed an exceptional sentence on the possession with intent and imposed consecutive sentences. *See id.* at 597. The appellate court found the evidence sufficient to permit a rational fact finder to conclude that the defendant was under the influence of drugs at the time of the accident. *See id.* at 593.

to an extent not considered in calculating his offender score.[5]

Souther next argues that his prior treatment for alcoholism and prior court orders to abstain from consuming alcohol were improperly considered. In *State v. Bolton*, 68 Wn. App. 211, 213, 842 P.2d 989 (1992), this court reversed an exceptional sentence where the trial court based its sentence in part on the defendant's callous disregard for the effects of alcohol. The defendant had a long history of driving while under the influence. *See id.* The *Bolton* court found that the use of callous disregard in this context was essentially equivalent to relying on an aggravating factor of future dangerousness, which is prohibited for all but sex offenses.[6] *See id.* at 215-16. The court disagreed with the proposition that an alcoholic who rejects or fails to profit from treatment is subject to an exceptional sentence where a nonalcoholic committing an identical crime would not be. *See id.* at 217.

But in *State v. Quiros*, 78 Wn. App. 134, 896 P.2d 91 (1995), the court declined to follow *Bolton*, agreeing instead with the dissenting opinion in that case. In *Quiros*, the trial court imposed an exception sentence for vehicular assault, based in part of the defendant's failure to get treatment for alcohol abuse:

The defendant's failure to submit to evaluation and treatment for alcohol abuse, despite the sentencing orders entered following his convictions for Driving While Under the Influence,

---

[5]Souther makes a separate argument that the Sentencing Reform Act of 1981 (SRA) does not authorize the trial court to consider the facts underlying his prior convictions. But these arguments depend on a finding that *Bartlett* does not apply. *Bartlett* specifically allows the court to draw from the facts of prior convictions relating to the present offense to show extraordinary circumstances in justifying an exceptional sentence. *See* 128 Wn.2d at 333. Having concluded above that *Bartlett* applies here and that the trial court properly distinguished between using the underlying facts of the prior convictions themselves and drawing from those facts a particularized knowledge gained by Souther that supports a finding of an especially culpable mental state, we find this separate SRA argument unpersuasive.

[6]But see the dissent, taking the position that a callous disregard for the effects of substance abuse is not the same as future dangerousness. *See id.* at 219-20 (Agid, J., dissenting).

and his continued abuse of alcohol, which led to the commission of these crimes and the severe injury to three innocent victims, constitute aggravating factors.

*Id.* at 137-38. The appellate court found that the trial court was not predicting future dangerousness, but was instead relying on "the defendant's awareness of the substance abuse problem accompanied by 'an unwillingness to take steps to cure the problem, that makes him more culpable when he again repeats the behavior than he would be if he had not had prior warnings and an opportunity to change his behavior.'" *Id.* at 141 (quoting *Bolton*, 68 Wn. App. at 222 (Agid, J., dissenting)).

■ Under the circumstances of this case, we find that the trial court did not err by considering Souther's alcohol treatment and court orders that he not drink alcohol. The trial court specifically stated that these factors served to enhance Souther's "special knowledge of the consequences of driving under the influence of alcohol" and contributed to his culpability. The trial court was not predicting future dangerousness.

### 2. Prior Convictions Included in the Offender Score

Criminal history that is taken into account in calculating a defendant's offender score may not be considered in imposing an exceptional sentence. *See Bartlett*, 128 Wn.2d at 331. While the trial court may not rely on the fact of a prior conviction that was counted in the defendant's offender score to impose an exceptional sentence, that is not what the trial court did in this case. As the discussion above demonstrates, the trial court looked to the prior convictions only as indications of an increased awareness of the consequences of driving while under the influence and greater culpability. Thus, the trial court did not err.

### 3. Unscored Misdemeanors

Souther argues that the trial court's reliance on unscored misdemeanors to impose an exceptional sentence violates the legislative sentencing scheme. He further argues that such reliance is contrary to a finding in *State v. Hicks*, 77

Wn. App. 1, 888 P.2d 1235 (1995), that the use of washed out offenses in imposing an exceptional sentence constituted an impermissible consideration of future dangerousness. But courts are allowed to consider prior criminal history where it has not already been factored into the presumptive sentencing range. *See State v. McAlpin*, 108 Wn.2d. 458, 464, 740 P.2d 824 (1987); *Hicks*, 77 Wn. App. at 5; *State v. Dunivan*, 57 Wn. App. 332, 336, 788 P.2d 576 (1990). The *Hicks* court disallowed the use of prior criminal history in that case because the trial court stated that the defendant had a strong proclivity to commit the crimes at issue, which is essentially a prediction that the defendant will reoffend and thus a finding of future dangerousness. *See* 77 Wn. App. at 5. This is not the case here. The trial court looked to the unscored misdemeanors only as an indication of increased awareness of the consequences of driving under the influence.

### 4. Blood Alcohol Content

The trial court expressly stated that it considered each reason standing alone to be a substantial and compelling justification sufficient to impose an exceptional sentence. Finding above that Souther's increased mental awareness and high level of mental culpability was a substantial and compelling reason justifying the exceptional sentence, we need not address whether Souther's blood alcohol content of 0.29, standing alone, constitutes a sufficient reason for imposing an exceptional sentence.

### B. Length of the Exceptional Sentence

■■ ■■ We will reverse the length of an exceptional sentence as clearly excessive only for an abuse of discretion. *See State v. Ritchie*, 126 Wn.2d 388, 392, 894 P.2d 1308 (1995). A sentence is not clearly excessive unless it is clearly unreasonable, that is, it was imposed on untenable grounds or for untenable reasons or is a sentence that no reasonable person would have imposed. *See State v. Stephens*, 116 Wn.2d 238, 245, 803 P.2d 319 (1991) (citing *State v. Oxborrow*, 106 Wn.2d 525, 531, 723 P.2d 1123 (1986)).

Here, Souther's standard range sentence was 41 to 54 months. He received a sentence of 240 months, more than four times the standard range. Nevertheless, the sentence is not one that "no reasonable person" would have imposed, and thus, we cannot find that the trial court abused its discretion.

## CONCLUSION

Finding no prejudicial error and no abuse of discretion by the trial court in sentencing, we affirm.

GROSSE and APPELWICK, JJ., concur.

Review denied at 142 Wn.2d 1007 (2000).