IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70363-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MANOA VAIPAPALANGI MOTULIKI, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 12, 2013 |

SCHINDLER, J. — A jury convicted Manoa Vaipapalangi Motuliki of residential

burglary and possession of a stolen motor vehicle. Motuliki contends insufficient

evidence supports the convictions. In the alternative, Motuliki claims his attorney

provided ineffective assistance of counsel. Motuliki also asserts the court erred by

imposing a $1,200 "[t]rial per diem" fee as a financial obligation. We affirm the

conviction for residential burglary and possession of a stolen vehicle but remand to

address imposition of the "[t]rial per diem" fee.

FACTS

Leonard "Bud" Goodrich lived in a residence located on 88th Street in Hazel Dell.

Goodrich's good friend and neighbor Walter Raschke frequently visited him. Raschke

lives two houses down from Goodrich.

Goodrich died on February 25, 2011. Goodrich's sister Betty Janulewicz is the executor of his estate. After Goodrich died, Janulewicz maintained the house and regularly went there at least once a week. Raschke said that he also "had [a] habit of watching the house."

On June 29, 2011, Raschke saw a white pickup truck pull into the driveway of Goodrich's house. Raschke watched as a man got out of the truck and tried to enter the house first through the front door and then through the garage window. Raschke called Janulewicz and then called 911. Raschke described the man as "Hispanic" with "[m]edium" skin tone, dark hair, between five feet six inches and six feet in height, weighing approximately 200 pounds. The man was wearing a dark leather jacket.

Raschke said that after trying to get into the house, the man, later identified as Manoa Vaipapalangi Motuliki, returned to the pickup truck and left. However, Motuliki returned a few minutes later on foot. Raschke said that when Motuliki returned, he was no longer wearing the leather jacket, and that he climbed over the fence to the backyard.

The police responded to the 911 call within a few minutes. Deputy Andrew Kennison saw a man matching the description given by Raschke leaving through a sliding glass door at the back of the house. When Deputy Kennison yelled, "Stop, police," Motuliki "took off running the other way" jumping over two fences and running down the street into the nearby woods.

The police found a windowpane removed from a window at the back of the house. The windowpane was lying on the ground directly below the window. The police also found the pickup truck parked half a block away. Deputy Kennison said that

2

when he checked the hood of the truck, it was still warm. The officers found a black jacket inside the truck with a cell phone in the pocket. The phone belonged to "Noah Matu." The police also found a manila envelope inside the truck that contained mail addressed to "Noah." The police verified that the pickup truck was reported as stolen.

The State charged Motuliki with residential burglary and possession of a stolen vehicle. Twelve witnesses testified at trial, including Raschke, the owner of the white pickup truck, Deputy Kennison, Janulewicz, and Motuliki.

Raschke testified that Motuliki was the only one in the pickup truck. Raschke said that he was 80 to 100 yards away when he saw Motuliki trying to enter Goodrich's home. Deputy Kennison identified Motuliki as the man he saw fleeing from Goodrich's house.

Janulewicz testified that as the executor of Goodrich's estate, she checked on the house every week. Janulewicz said that the house was furnished and she was preparing for a garage sale.

Washington State Patrol Crime Laboratory forensic fingerprint expert Jill Arwine testified that the fingerprints on the windowpane from Goodrich's house matched Motuliki's fingerprints. The State also presented evidence that the cell phone from the truck belonged to Motuliki. Deputy Jared Stevens testified that the cell phone number matched the number Motuliki gave the police.

Stolen pickup truck owner Benjamin Galloway testified that the truck was stolen on June 12. Galloway said that after the police recovered the truck, the ignition did not work, the clutch was damaged, the radio had been destroyed, the tail light was shattered, and part of the interior "had been smashed."

3

Motuliki testified that the pickup truck belonged to a man named "George." Motuliki said that he and George drove to Goodrich's house hours before Raschke saw someone trying to break into the house. According to Motuliki, George told him that he owned the house. Motuliki testified that when George tried to enter the house, Motuliki looked in through the windowpane. After George was not able to get into the house, Motuliki told George he wanted to leave and George drove him to a friend's house. Motuliki testified that when George dropped him off, he left his cell phone in the pickup truck.

The jury found Motuliki guilty of residential burglary and possession of a stolen vehicle. The court sentenced Motuliki to nine months confinement. As part of the judgment and sentence, the court ordered Motuliki to pay legal financial obligations, including a jury demand fee of $250; fees for the court-appointed attorney of $1,000; and a "[t]rial per diem, if applicable" fee of $1,200.

## ANALYSIS

### Sufficiency of the Evidence

Motuliki contends the State did not prove beyond a reasonable doubt that he committed the crimes of residential burglary and possession of a stolen vehicle.

In reviewing a challenge to the sufficiency of the evidence, the court views the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Hepton, 113 Wn. App. 673, 681, 54 P.3d 233 (2002). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A challenge to the

4

sufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn therefrom." State v. Theroff, 25 Wn. App. 590, 593, 608 P.2d 1254 (1980). Circumstantial and direct evidence are equally reliable. State v. McNeal, 98 Wn. App. 585, 592, 991 P.2d 649 (1999). We defer to the trier of fact on "issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), abrogated in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

"A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." RCW 9A.52.025(1). A "dwelling" is "any building or structure . . . which is used or ordinarily used by a person for lodging." RCW 9A.04.110(7).

Motuliki claims the State did not prove beyond a reasonable doubt that Motuliki entered Goodrich's house or that the house was a "dwelling."

Whether a building is a dwelling "turns on all relevant factors," including whether it is furnished, whether it is maintained as a dwelling, and how long it was vacant. State v. McDonald, 123 Wn. App. 85, 91, 91 n.18, 96 P.3d 468 (2004). Viewing the evidence in the light most favorable to the State, sufficient evidence supports the jury determination that Motuliki entered the house, and that the house was a "dwelling."

Goodrich lived in the house for many years and passed away on February 25, 2011. The house was furnished and contained Goodrich's possessions. After Goodrich died, Janulewicz maintained and checked on the house every week. Janulewicz testified that she was taking steps to get the house ready for a garage sale.

5

Raschke saw Motuliki trying to break into the house through the front door and then the garage. Deputy Kennison identified Motuliki as the man he saw leaving the house through the back sliding glass door and then fleeing from the house. The forensic evidence established that the fingerprints on the windowpane that the intruder removed to later enter the house matched Motuliki. Sufficient evidence supports the conviction of residential burglary beyond a reasonable doubt.

Motuliki also contends the State did not prove beyond a reasonable doubt that he possessed the stolen truck or that he knew the pickup truck was stolen.

"A person is guilty of possession of a stolen vehicle if he . . . possesses a stolen motor vehicle." RCW 9A.56.068(1).

> Possession may be actual or constructive, and constructive possession can be established by showing the defendant had dominion and control over the [property] or over the premises where the [property] was found.

State v. Echeverria, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997). "Actual possession means that the goods are in the personal custody of the person charged with possession." State v. Callahan, 77 Wn.2d 27, 29, 459 P.2d 400 (1969). Knowledge that the property was wrongfully appropriated is an essential element of the crime of possession of stolen property. State v. Hatch, 4 Wn. App. 691, 693, 483 P.2d 864 (1971).

Mere possession of recently stolen property is insufficient to establish that the possessor knew the property was stolen. State v. Couet, 71 Wn.2d 773, 775, 430 P.2d 974 (1967). But possession of recently stolen property coupled with slight corroborative evidence is sufficient to prove guilty knowledge. State v. Womble, 93 Wn. App. 599, 604, 969 P.2d 1097 (1999). Corroborative evidence includes damage to the vehicle

6

and the absence of a plausible explanation for legitimate possession. State v. L.A., 82 Wn. App. 275, 276, 918 P.2d 173 (1996); Womble, 93 Wn. App. at 604.

Viewing the evidence in the light most favorable to the State, the evidence established that Motuliki possessed the stolen pickup truck. Raschke testified that the driver of the pickup truck was the only person in the truck. Minutes later, Deputy Kennison identified Motuliki as the man he saw leaving Goodrich's house out of the sliding back door and then fleeing. The police found the stolen pickup truck parked nearby with Motuliki's cell phone and other items belonging to Motuliki. The owner of the truck testified that it was damaged, the truck's interior "had been smashed," the radio was destroyed, and the ignition was not working properly.

Ineffective Assistance of Counsel

In the alternative, Motuliki contends his attorney provided ineffective assistance of counsel by failing to question him during direct examination about a prior theft conviction. During cross-examination, after Motuliki denied having a prior conviction for theft, the State then introduced into evidence the judgment and sentence of the prior theft conviction. Motuliki also asserts his attorney provided ineffective assistance of counsel by failing to ask the court to give a limiting instruction.

In order to prevail on a claim of ineffective assistance of counsel, Motuliki must demonstrate (1) deficient performance and (2) resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Bowerman, 115 Wn.2d 794, 808, 802 P.2d 116 (1990) (adopting the standards in Strickland). If a defendant fails to establish either prong, we need not inquire further. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

7

To establish prejudice, a defendant must show a reasonable probability that the outcome of the trial would have differed absent the deficient performance. State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). Because the overwhelming evidence supports the jury finding that Motuliki committed residential burglary and possessed a stolen motor vehicle, Motuliki cannot establish prejudice.

Trial Per Diem Fee

Motuliki contends the court did not have the authority to order him to pay a $1,200 "[t]rial per diem" fee in addition to the jury demand fee of $250. The State contends the $1,200 trial per diem fee is part of recoupment for the court-appointed attorney.

The court may order a defendant to pay court costs and other assessments "required by law." RCW 9.94A.760(1). Legal financial obligations include:

> [C]ourt costs, county or interlocal drug funds, court-appointed attorneys' fees, and costs of defense, fines, and any other financial obligation that is assessed to the offender as a result of a felony conviction.

RCW 9.94A.030(30).

Motuliki asserts the trial per diem fee violates his constitutional right to a jury trial. See U.S. CONST. amends. VI and XIV, § 1; WASH. CONST. art. I, §§ 21 and 22.[1] Motuliki also contends there is no statutory authority to impose a $1,200 trial per diem fee in

---

[1] The State argues Motuliki's challenge to the legal financial obligation is not ripe. State v. Smits, 152 Wn. App. 514, 523, 216 P.3d 1097 (2009); State v. Bunch, 168 Wn. App. 631, 633, 279 P.3d 432 (2012). We exercise our discretion to consider Motuliki's argument. State v. Ford, 137 Wn.2d 472, 477, 973 P.2d 452 (1999); Bunch, 168 Wn. App. at 633.

addition to the statutory jury demand fee of $250.[2] RCW 10.01.160(2) provides, in pertinent part:

> Costs shall be limited to expenses specially incurred by the state in prosecuting the defendant . . . . They cannot include expenses inherent in providing a constitutionally guaranteed jury trial or expenditures in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law.

The judgment and sentence sets forth the court-appointed attorney fees and the "[t]rial per diem" fee as follows:

> **4.3 Legal Financial Obligations:** The defendant shall pay to the clerk of this court:
>
> _JASS CODE_
>
> . . . .
>
> _PUB_      $1,000.00    Fees for court appointed attorney . . . RCW 9.94A.760
>
>               $1,200.00    Trial per diem, if applicable.

The State argues that because the "[t]rial per diem" fee is located right below the court-appointed attorney fees under the "_JASS CODE_" designation of "_PUB_," it is related to the fees for the court-appointed attorney. But the State does not explain what the "_JASS CODE_" or the "_PUB_" designation means, or how the "[t]rial per diem, if applicable" fee is related to court-appointed attorney fees. Accordingly, we remand to the sentencing court to either clarify or amend judgment and sentence.[3]

---

[2] Motuliki concedes the court has the authority to order him to pay the jury demand fee of $250.

[3] Further, the judgment and sentence cites RCW 9.94A.760 for "[f]ees for court appointed attorney." The judgment and sentence does not cite statutory authority for the "[t]rial per diem" fee.

We affirm the convictions but remand to address the imposition of the "[t]rial per diem" fee.

WE CONCUR: